# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

FRANCIS SMYTHE,

                              Plaintiff,

        v.                                            9:13-CV-1288
                                                     (LEK/ATB)

JOHN BISH, et al,

                              Defendants.

FRANCIS SMYTHE, Plaintiff pro se
RYAN E. MANLEY, Ass't Att'y Gen. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that his due process rights were

violated during two separate prison disciplinary hearings.  (Dkt. No. 38, Sec. Am.

Compl. at 5-60). Plaintiff also alleges that the charges in his first disciplinary hearing,

held in November 2011, were the result of a conspiracy between defendant Kevin Wise,

a correctional officer, and defendant John Bish, an inmate.  (Sec. Am. Compl. at 53-54).

Plaintiff alleges that the charges in his second disciplinary hearing, held in January

2011, were retaliatory and based upon information discovered when defendant Amodeo

illegally interfered with plaintiff's mail.  (Sec. Am. Compl. at 56).

Presently before the court is a motion to dismiss the complaint in its entirety filed

on December 7, 2015 on behalf of defendants Amodeo, Fischer, McLoughlin, Prack,

Wolczyk, Robinson, Graham, and Venettozzi, and a separate motion to dismiss the conspiracy claim against defendant Wise, filed on January 4, 2016.[1] (Dkt. Nos. 51, 63). Both motions are premised on a lack of jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[2] For the following reasons, this court recommends dismissal of all of plaintiff's claims. In light of the recommended dismissal of the conspiracy claim against defendant Wise, this court also recommends dismissal of the same claim against defendant Bish, the alleged co-conspirator.

## I. Facts[3] and Procedural History

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), currently housed at Great Meadow Correctional Facility. (Sec. Am. Compl. at 1). At all times relevant to his second amended complaint, plaintiff was confined at Auburn Correctional Facility ("Auburn"). (*Id*. at 3).

### A. First Misbehavior Report ("MBR-1")

On November 17, 2010, plaintiff was charged with conspiring/attempting to

---

[1] The only non-moving defendant is Mr. Bish, a private citizen currently housed at the Elmira Correctional Facility. He was served on February 25, 2016, and filed an answer on March 16, 2016. (Dkt. Nos. 67, 71).

[2] Defendants also assert that the second amended complaint, which consists of sixty pages with over five hundred pages of exhibits, should be dismissed for violating F.R.C.P. 8(a)(2) which requires a short and plain statement of plaintiff's claim. In light of the August 20, 2015 Decision and Order (Dkt. No. 37), that approved the second amended complaint for filing and distilled the nature of plaintiff's claims, this court considers dismissal on Rule 8(a)(2) grounds inappropriate.

[3] This court is assuming the truth of the facts as stated in the amended complaint only for purposes of this motion.

escape and violent conduct, in a misbehavior report ("MBR-1") by defendant Wise. The charges were based upon information received from a confidential informant. (Sec. Am. Compl. at 5; Dkt No. 38-1 at 28). On the same day, defendant Amodeo initiated a mail watch and intercepted, confiscated and read plaintiff's incoming and outgoing mail. (Sec. Am. Compl. at 16, 43). This mail included legal documents related to pending lawsuits filed by plaintiff. (*Id*.).

On November 18, 2010, in preparation for the disciplinary hearing on the escape and violent conduct charges, plaintiff met with defendant McLoughlin, a corrections officer selected to assist him. (*Id*. at 6). Plaintiff suspected that defendant Bish, who had been housed in the cell next to him, relayed the "confidential" information to prison staff "in hopes of currying favor" with them. (*Id*.). Plaintiff requested that defendant Bish be called as a witness, but defendant McLoughlin stated that Bish refused to testify. (*Id*.). Plaintiff also requested all paperwork pertaining to MBR-1, but defendant McLoughlin stated that no paperwork existed and advised plaintiff to raise the issue with the hearing officer. (*Id*.). Later, McLoughlin advised plaintiff that the requested material was confidential. (*Id*.).

On November 19, 2010, defendant Wolczyk presided over plaintiff's disciplinary hearing. (Sec. Am. Compl. at 7; Dkt. No. 38-1 at 58-131). Plaintiff objected to the hearing, citing the lack of assistance from McLoughlin, including a failure to provide plaintiff with any paperwork related to the charged violations. (Dkt. No. 38-1 at 60-63). Wolczyk informed plaintiff that his requested witness, Bish, "refused" to testify. (Dkt. No. 38-1 at 61.). Plaintiff, aware that Bish had been released on the day prior to

3

the hearing[4], challenged Wolczyk's statement, and requested that defendant McLoughlin be called as a witness to describe his interactions with Bish prior to the hearing. (Sec. Am. Compl. at 7; Dkt. No. 38-1 at 61). Defendant Wolczyk ignored this request, but adjourned the hearing for several days so that he could have a "confidential conversation" with defendant Wise, to ascertain the reliability of the information in MBR-1. (Sec. Am. Compl. at 8).

During the adjournment, plaintiff wrote a letter dated November 21, 2010 to defendant Graham, the Auburn Superintendent, asking for an investigation into the circumstances of his disciplinary hearing, particularly the reliance on the unidentified confidential informant that plaintiff believed was defendant Bish. (Dkt. No. 38-1, at 158-160). The hearing was reconvened on December 3, 2010, and several witnesses, including defendants Amodeo and Wise, testified. (Dkt. No. 38-1 at 73-104). When plaintiff questioned these witnesses regarding the accusations against him and the reliance upon Bish, the witnesses refused to respond, claiming that the matter was confidential. (*Id.*). During the hearing, defendant Wolczyk read a letter from Bish's parole officer, which stated that Bish had failed to report to him as required, and that an arrest warrant had been issued. (Sec. Am. Compl. at 13, Dkt. No. 38-1 at 108-09). Bish's whereabouts at the time of the hearing were unknown. (*Id.*)

Defendant Wolczyk found plaintiff guilty of all charges, and sentenced him to thirty months in the Special Housing Unit ("SHU"), and thirty-six months loss of good time and all privileges. (Sec. Am. Compl. at 15; Dkt. No. 38-1 at 128-131). On

---

[4] It is unclear how plaintiff knew that defendant Bish had been released.

December 3, 2010, plaintiff appealed the determination to defendant Fischer, and requested an investigation. (Sec. Am. Compl. at 16; Dkt No. 38-1 at 140). Plaintiff sent a supplemental letter to Fischer regarding the hearing on January 24, 2011. (Dkt. No. 38-1 at 153-54).

## B. Second Misbehavior Report ("MBR-2")

On January 7, 2011, defendant Amodeo issued a misbehavior report ("MBR-2"), based upon his review of plaintiff's mail, and charged plaintiff with soliciting and extortion. (Sec. Am. Compl. at 16). The soliciting charge stemmed from a letter that Amodeo interpreted as encouraging plaintiff's niece to smuggle tobacco into Auburn. (Dkt. No. 38-1 at 167, 173). The extortion charge was based on separate correspondence in which plaintiff encouraged his niece to locate defendant Bish, and if necessary, threaten to have Bish's parole revoked unless he signed a favorable affidavit regarding MBR-1. (Dkt. No. 38-1 at 178).

Defendant McLoughlin was assigned to assist plaintiff with preparation of a defense to MBR-2. (Id. at 17). McLoughlin again provided minimal assistance in obtaining requested documents. (Id.). He also refused to answer plaintiff's questions regarding the November 2010 disciplinary hearing. (Id.).

Plaintiff entered a not guilty plea to the charges in MBR-2 at the January 12, 2011 disciplinary hearing, and requested several witnesses and documents related to his defense. (Id. at 17-18). He also objected to the assigned hearing officer, and the hearing was adjourned until January 20, 2011. (Id. at 18; Dkt. No. 38-2 at 150). Defendant Robinson took over as hearing officer on that date, and denied plaintiff's

5

request for the mail watch order, contraband receipts, and other documentation, and told plaintiff that the evidence was either confidential or did not exist. (*Id*. at 20). At the hearing, several witnesses, including defendant Amodeo, described their interpretation of plaintiff's letters. (Dkt. No. 38-1 at 190-196). Based upon their testimony and plaintiff's admission that he wrote the letters to his niece, defendant Robinson found plaintiff guilty of all charges and sentenced him to eighteen months in SHU with loss of privileges, and made arrangements to transfer plaintiff out of Auburn. (Dkt. No. 38-1 at 213-15).

## C. Procedural History of Federal Claim

Plaintiff filed this federal action on October 17, 2013. (Dkt. No. 1). On September 9, 2014, the court granted his in forma pauperis application, and dismissed certain claims. (Dkt. No. 11). On October 10, 2014, plaintiff filed a motion for reconsideration and for leave to amend the complaint. (Dkt. No. 12). Plaintiff also provided a *Peralta* waiver[5] in accordance with the court's prior order. (Dkt. No. 12, at 10). In a Decision and Order filed January 27, 2015, the court denied the motion for reconsideration but granted plaintiff leave to amend his complaint. (Dkt. No. 16). Plaintiff filed an amended complaint on March 2, 2015. (Dkt. No. 19).

On May 4, 2015, plaintiff filed a motion to file a second amended complaint. (Dkt. No. 29). On August 20, 2015, Judge Lawrence E. Kahn accepted the second

---

[5] In *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006), the Second Circuit held that an inmate could proceed under 42 U.S.C. § 1983 with a challenge to the sanctions which affect the conditions of his confinement only if he was willing to "forgo once and for all any challenge to any sanctions that affect the duration of his confinement." *Id.* This has become known as a *Peralta* waiver.

amended complaint for filing (Dkt. No. 37), and construed it as raising the following claims:

> (1) Fourteen Amendment due process claims against defendants McLoughlin, Wolczyk, Robinson, Prack, Fischer, and Graham, relating to the hearing arising out of MBR-1;
>
> (2) First Amendment retaliation and mail interference claims against defendant Amodeo in connection with MBR-2;
>
> (3) Fourteenth Amendment due process claims against defendants McLoughlin, Robinson, and Venettozzi, relating to the hearing arising out of MBR-2;
>
> (4) conspiracy claims against defendants Wise and Bish related to MBR-1.

On December 7, 2015, defendants Amodeo, Fischer, McLoughlin, Prack, Robinson, Venettozzi, and Wolczyk filed a motion to dismiss. (Dkt. No. 51). Defendant Graham was served on December 15, 2015, and the court granted him permission to join that motion. (Dkt. Nos. 55, 56). Plaintiff responded to the motion on December 30, 2015. (Dkt. No. 61).

Defendant Wise was served on December 15, 2015, and filed a separate motion to dismiss the conspiracy claim against him on January 4, 2016. (Dkt. No. 63). Plaintiff advised the court on January 8, 2016 that he would not be responding to defendant Wise's motion. (Dkt. No. 66).

## II.  __Motion to Dismiss__

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).  Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York*

*Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties); *Farid v. Bouey*, 554 F. Supp. 2d 301, 313-14 (N.D.N.Y. 2008) (taking judicial notice of documents relating to plaintiff's prior Article 78 proceeding in state court).

## III. Subject Matter Jurisdiction

### A. Collateral Estoppel

#### 1. Legal Standards

The doctrine of collateral estoppel[6] provides that once a court has actually and

---

[6] Res judicata includes two concepts: claim preclusion and issue preclusion. Issue preclusion is also known as collateral estoppel. *Rivera v. City of New York*, 594 F. App'x 2, 5 (2d Cir. 2014). In claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Generally, claim preclusion does not apply to bar section 1983 actions after an Article 78 proceeding. *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *see also Leo v. N.Y.C. Dep't of Educ.*, No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (res judicata doctrine did not apply to § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding). In this case, defendants do not argue that claim preclusion applies. Thus, this court will confine its discussion to collateral estoppel.

9

necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted). Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel).

### 2. Application

Plaintiff notes that he had previously litigated claims associated with MBR-1 and MBR-2 as Article 78 proceedings in state court. (Sec. Am. Compl. at 21-23). As exhibits to his second amended complaint, plaintiff has included the final decisions of the state courts, his Article 78 petitions, and both parties's briefs to the New York State Appellate Division, Third Department ("Appellate Division"). (Dkt. No. 38-2 at 169-213). These exhibits allow a comprehensive review of the issues raised in those proceedings. Defendants argue that plaintiff previously raised due process claims

against defendants McLoughlin, Wolczyk, Robinson, Prack, Venettozzi and Fischer in his Article 78 proceedings, and is therefore barred by collateral estoppel from raising the same issues in this federal civil rights action. (Dkt. No. 51-1, Def. Br. at 7-14). Based upon a review of the Article 78 materials included as exhibits to the second amended complaint, this court concludes that collateral estoppel applies to most, but not all, of the due process claims raised in this proceeding.

### a.    MBR-1

Plaintiff commenced an Article 78 proceeding in Albany County Court by pro se petition dated April 6, 2011 against DOCCS Commissioner Brian Fischer, alleging due process violations leading up to and during the disciplinary hearing for the charges in MBR-1.[7] The facts in the state court petition are identical to those in his federal complaint, including the lack of assistance by defendant McLoughlin, the failure to provide documents responsive to plaintiff's requests, the failure to produce defendant Bish as a witness, and the repeated invocation of confidentiality by witnesses. (Dkt. No. 38-2 at 169-74).

Plaintiff's causes of action in his Article 78 petition were listed as follows:

(1)    Plaintiff's due process rights were violated by a lack of assistance in preparing for his disciplinary hearing;

(2)    The hearing officer and witnesses refused to adequately disclose the nature and source of the charges against him;

---

[7] The fact that all defendants in this proceeding were not named as parties to the Article 78 proceeding does not affect the application of collateral estoppel. *See LaFleur v. Whitman*, 300 F.3d 256, 274 (2d. Cir. 2002).

(3)     The hearing officer failed to independently assess the credibility and reliability of confidential informant Bish, refused to call requested witnesses, and violated DOCCS procedural requirements; and

(4)     The determination of guilt was not based on substantial evidence.

The proceeding was transferred to the Appellate Division pursuant to New York CPLR § 7804(g). (Dkt. No. 38-2 at 57). Plaintiff, then represented by counsel, submitted a brief that alleged due process violations due to the lack of assistance prior to the disciplinary hearing, the inadequate notice of the charges against him, the failure to disclose evidence necessary to prepare a defense, the refusal to call witnesses Bish and McLoughlin, and the lack of substantial evidence to support the hearing officer's determination. (*Id*. at 58, 65-80). Again, these are essentially the same due process claims as plaintiff raises in this federal proceeding.

The New York State Attorney General's office filed a responsive brief (Dkt. No. 38-2 at 87-101) that argued:

(1)     MBR-1 was sufficiently detailed for plaintiff to prepare a defense;

(2)     the hearing officer properly withheld confidential information from plaintiff;

(3)     MBR-1, the hearing testimony, and the confidential material provided substantial evidence to support the guilty determination; and

(4)     plaintiff failed to preserve his objection to the hearing officer's refusal to call defendant McLoughlin as a witness.

The Appellate Division affirmed the disciplinary hearing, and the New York Court of Appeals denied leave to appeal. *Matter of Smythe v. Fischer*, 102 A.D.3d 1039, 957 N.Y.S.2d 1039 (3d Dep't 2013), *lv. denied*, 21 N.Y.3d 852, 965 N.Y.S.2d 790 (2013). The Appellate Division held that "[t]he misbehavior report and testimony of the correction officials familiar with the investigation, as well as the confidential information considered by the Hearing Officer in camera, provide *substantial evidence* supporting the determination of guilt."[8] 102 A.D.3d at 1040, 957 N.Y.S.2d at 918 (emphasis added) (citations omitted). "Contrary to petitioner's claim, the Hearing Officer conducted a proper inquiry to ascertain the credibility and reliability of the information provided by the confidential source by interviewing the correction sergeant who spoke to this individual." *Id.* (citations omitted). The Appellate Division also held that "[p]etitioner's remaining claims have *either not been preserved for our review or are lacking in merit*." *Id*. (emphasis added).

The Article 78 briefs included as part of plaintiff's Second Amended Complaint demonstrate that he had a full and fair opportunity to litigate his due process claims related to MBR-1 at the state court level. *See, e.g., Gourdine v. Prack*, No. 9:15-CV-101 (LEK/TWD), No. 2015 WL 9487866, at *5 (N.D.N.Y. Nov. 4, 2015) (Rep't-Rec.), *adopted*, 2015 WL 9484511, at *1 (N.D.N.Y. Dec. 29, 2015). Therefore, the key

---

[8] The court must note that the state court standard for sufficiency of the evidence in a prison disciplinary hearing is "substantial evidence," whereas the standard in a federal constitutional due process challenge is only "some," or "a modicum" of evidence. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard). Thus, the state court standard is more favorable to the inmate plaintiff because more evidence is required to sustain the disciplinary determination than under federal due process standards.

inquiry for collateral estoppel purposes is whether defendants have met their burden of showing that the issues were "actually decided" by the Appellate Division.[9] In its decision, the Appellate Division made specific findings that go to the merits of certain of plaintiff's due process claims related to MBR-1, specifically: (1) that defendant Wolczyk lacked "some evidence" to support his disciplinary determinations regarding MBR-1; (2) that defendant Wolczyk improperly failed to disclose confidential information regarding the allegations in MBR-1; and (3) that defendant Wolczyk failed to call defendant Bish as a witness. Therefore, collateral estoppel bars further litigation of these claims. Collateral estoppel also bars the due process claims arising from MBR-1 against defendants Prack, Fischer, and Graham, because their only alleged involvement was the review of plaintiff's formal appeals and other complaints related to a disciplinary hearing that the state court found to comport with due process.[10] (Sec. Am. Compl. at 21, 28; Dkt. No. 38-1 at 140-41, 153-54, 158-60).

Collateral estoppel does not extend to all of plaintiff's due process claims associated with MBR-1, however. For this doctrine to apply, the defendant must demonstrate that it is "quite clear" that the Appellate Division decided the issue. *Lyons*

---

[9] The application of collateral estoppel in civil rights actions under section 1983 is in contrast to the "traditional exception to res judicata for habeas corpus review." *See Allen v. McCurry*, 449 U.S. 90, 98 n.12 (1980). Plaintiff has not brought an action for habeas review and has waived any challenge to his good time under *Peralta*; thus, no exception to the application of collateral estoppel applies.

[10] While defendant Prack decided plaintiff's appeal of the disciplinary hearing, plaintiff had separately written to defendant Fischer requesting that he "reverse this decision, expunge this matter from my record, and return me to the same liberty and programs I enjoyed before this." (Dkt. No. 38-1 at 149). Plaintiff had also written to defendant Graham requesting that he look into the false allegations by defendant Bish and the general use of confidential informants in disciplinary hearings. (Dkt. No. 38-1 at 158-60).

*v. Lancer Ins. Co.*, No. 07-CV-7095, 2008 WL 4525542, at *4 (S.D.N.Y. Sep. 30, 2008) (quoting *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007)).  If a decision can be interpreted as not addressing an issue because the state court deemed the argument to have been waived, then, for collateral estoppel purposes, the issue has not been decided.  *Fuschberg & Fuschberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002).  If the basis for the states court's decision is ambiguous, collateral estoppel does not prevent a federal court from addressing the issue.  *Lyons*, 2008 WL 4525542, at *4.

Here, the Appellate Division, after addressing the validity of defendant Wolczyk's decision and his handling of the confidential informant issue, found that the remainder of plaintiff's claims – the inadequate assistance of defendant McLoughlin and the refusal to call defendant McLoughlin as a witness – "have either not been preserved for our review or are lacking in merit."  Because the state court's language is ambiguous regarding the disposition of these claims, this court concludes that it is not "quite clear" that these issues were necessarily decided by the Appellate Division.[11]  Therefore, these claims are not barred by collateral estoppel.

### b.    MBR-2

Plaintiff commenced an Article 78 proceeding in Albany County Court by pro se petition dated April 18, 2011 against Brian Fischer, that alleged due process violations

---

[11] The New York State Attorney General's office only raised a "failure to preserve" argument at the state court level with regard to the denial of plaintiff's request to call McLoughlin as a witness.  (Dkt. No. 38-2 at 100-01).  This makes it more likely that the Appellate Division rejected plaintiff's other remaining claim, alleging inadequate pre-hearing assistance, solely on the merits.  However, the court need not reach that conclusion because both these claims are already barred by the *Rooker-Feldman* doctrine, as discussed below.

15

leading up to and during the January 2011 disciplinary hearing for the charges in MBR-2. Again, the facts in the state court petition are identical to those in plaintiff's federal complaint. He alleged due process violations stemming from defendant McLoughlin's inadequate assistance prior to the hearing and the conduct of the hearing by defendant Robinson, as well as violations of state law and DOCCS policy. (Dkt. No. 38-2 at 190-208).

Plaintiff's causes of action in the Article 78 petition were listed as follows:

(1)     Plaintiff's due process rights were violated by a lack of assistance in preparing for his disciplinary hearing, particularly with regard to obtaining necessary documents;

(2)     The charges against him were inappropriate for the violations alleged under state law and regulations;

(3)     The charges against him were vague and embellished;

(4)     The hearing was not conducted in a timely manner or in compliance with DOCCS policy;

(5)     The hearing officer was biased;

(6)     The hearing officer denied his request for relevant witnesses;

(7)     The determination of guilt was not based upon substantial evidence.

As with the prior litigation, the proceeding was transferred to the Appellate Division pursuant to New York CPLR § 7804(g). (Dkt. No. 38-2 at 216). Plaintiff, again represented by counsel, submitted a brief that restated the claims from his petition: due process violations due to the refusal to locate plaintiff's niece so that she could testify, an incomplete transcript of the proceeding, and the failure to provide

relevant documents; and the lack of substantial evidence for the guilty determination. (Dkt No. 38-2 at 227-51).

The New York State Attorney General's office filed a response brief (Dkt No. 38-2 at 252-275) with the Appellate Division, arguing that:

(1)     substantial evidence supported the hearing officer's determination;

(2)     the hearing officer made a reasonable and substantial effort to contact plaintiff's niece;

(3)     plaintiff had been provided all necessary documents and assistance; and

(4)     the hearing transcript was sufficient to allow meaningful review.

The Appellate Division affirmed the disciplinary hearing, and the New York Court of Appeals denied leave to appeal. *Matter of Smythe v. Fischer*, 101 A.D.3d 1280, 955 N.Y.S.2d 461 (3d Dep't 2012), *lv. denied*, 20 N.Y.3d 861, 964 N.Y.S.2d 861 (2013). The Appellate Division held that the correspondence between plaintiff and his niece, the misbehavior report, and defendant Amodeo's testimony constituted substantial evidence supporting the determination. 101 A.D.3d at 1281, 955 N.Y.S.2d at 461 (citations omitted). The state court also found that "[t]he Hearing Officer made reasonable and substantial efforts to contact petitioner's witness and, in any event, her testimony would not negate the content of the letters authored by petitioner, which speak for themselves. Regarding petitioner's remaining contentions, we find that the transcript, insofar as it contains the minutes of the hearing at issue, is sufficiently

complete as to allow meaningful review, and petitioner was not denied access to necessary documents." *Id.* (citations omitted). In support of this final conclusion, the Appellate Division cited *Matter of Jimenez v. Fischer*, 56 A.D.3d 708, 867 N.Y.S.2d 561 (3d Dep't 2008), a case which addressed the standards for adequate employee assistance of inmates preparing for disciplinary hearings.

Like MBR-1, the petition and briefs submitted as part of plaintiff's second amended complaint demonstrate that he had a full and fair opportunity in state court to litigate the issues raised in this federal proceeding regarding MBR-2. Unlike MBR-1, it is quite clear that the state court actually addressed each of the issues related to MBR-2 on the merits, including the lack of adequate assistance. Therefore, collateral estoppel bars plaintiff from relitigating his allegations against Robinson (who conducted the disciplinary hearing), Venettozzi (who upheld the determination on appeal), and McLoughlin (who assisted plaintiff prior to the hearing). Accordingly, this court recommends that the due process claims against defendants Robinson, Venettozzi, and McLoughlin related to MBR-2 be dismissed on collateral estoppel grounds.

### B. *Rooker-Feldman*

#### 1. **Legal Standards**

Like collateral estoppel, a challenge under the *Rooker Feldman*[12] doctrine asserts a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine

---

[12] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims, whether or not raised in state court, that assert injury based on a state judgment and seek review and reversal of that judgment. *Hensel v. City of Utica*, 6:15-CV-374 (LEK/TWD), 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Such claims are "inextricably intertwined" with the prior state court determination. *Id.*

As applied in this circuit, four prerequisites must be met for the *Rooker Feldman* doctrine to apply: (1) the federal court plaintiff lost in state court; (2) plaintiff complains of injuries flowing from the state court judgment; (3) the action invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered prior to commencement of the federal court proceedings. *Hoblock*, 422 F.3d at 85.

### 2. Application

In this case, the first and fourth prongs of *Rooker Feldman* are readily met, as plaintiff lost in state court, and both state court proceedings were complete when this federal action commenced. A review of the second amended complaint demonstrates that the second prong is also met. While plaintiff's arguments are directed at the named defendants, he also recites the history of litigation in state court, and accuses those courts (described by plaintiff as "the lower courts") of "improperly handling of these

issues." (Sec. Am. Compl. at 23, 57).  Accordingly, the key inquiry is whether the third prong of *Rooker Feldman* has been met.  This court concludes that it has, for the reasons below.  Therefore, federal jurisdiction is barred because all of plaintiff's due process claims are inextricably intertwined with the prior state court decisions related to MBR-1 and MBR-2.

As previously discussed, all of plaintiff's due process claims in this proceeding mirror those raised before the Appellate Division.  If plaintiff were allowed to re-argue the same claims at the federal level, the court would be reviewing and potentially overturning the state court decisions, in contradiction of *Rooker Feldman*.  This prohibition of federal jurisdiction includes plaintiff's claims that defendant McLoughlin provided him inadequate assistance, and that plaintiff should have been allowed to call McLoughlin as a witness regarding MBR-1.  Although collateral estoppel does not apply to these two claims, litigation of these issues would necessarily require the federal court's review of the evidence supporting defendant Wolczyk's guilty determination.  *See Pilgrim v. Luther,* 571 F.3d 201, 206 (2d Cir. 2009) (violations of qualified right to assistance in preparing a defense in advance of prison disciplinary hearing are reviewed for harmless error); *Clark v. Dannheim*, 590 F. Supp. 2d at 426, 429-31 (W.D.N.Y. 2008) (to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing).  The federal court is barred from such inquiry by *Rooker Feldman*, because that issue has already been decided in the Article 78 proceeding, under the stringent

"substantial evidence" standard.  Therefore, all of plaintiff's due process claims against defendants Wolczyk, Robinson, McLoughlin, Prack, Venettozzi, Graham, and Fischer should be dismissed for lack of subject matter jurisdiction.

## IV.  Mail Watch

### A.  Legal Standard

Among the protections enjoyed by prison inmates, subject to appropriate limitations, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment.  *Ford v. Fischer*, 539 F. App'x 19, 19-20 (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  This right, however, must yield to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities.  *Duamutef v. Hollins*, 297 F.3d 108, 112–13 (2d Cir. 2002) (citing, *inter alia*, *U.S. v. Workman*, 80 F.3d 688, 699 (2d Cir.1996)).  "The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation infringing on an inmate's constitutional rights is valid so long as the regulation is "reasonably related to the legitimate penological interests."  *Turner*, 482 U.S. at 89.  Applying this precept, "[c]ourts have constitutionally afforded greater protection . . . to outgoing mail than to

incoming mail." *Davis*, 320 F.3d at 351 (citations omitted). Nonetheless, the Second Circuit has held that "'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman*, 80 F.3d at 698 (quoting *Wolfish v. Levi*, 573 F.2d 118, 130 n. 27 (2d Cir.1978), *rev'd in part on other grounds sub nom.*, *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Prison security is a legitimate penological interest that justifies limitations on an inmate's First Amendment rights related to regular mail. *See Cancel v. Goord*, No. 00-CIV-2042 LMM, 2001 WL 303713, at *6 (S.D.N.Y. March 29, 2001). The interception of a prisoner's correspondence does not violate that individual's First Amendment rights if prison officials had "good" or "reasonable" cause to inspect the mail. *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998)). Legal mail is entitled to a higher degree of protection than regular mail, and "prison policies or practices which interfere with legal mail on a regular basis whether incoming or outgoing must be supported by a legitimate penological interest other than mere general security concerns which permit interference with regular mail. *Cancel*, 2001 WL 303713 at *6 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

### B.    Application

Plaintiff alleges that his constitutional rights were violated because defendant Amodeo "intercepted, confiscated, and read" the contents of several personal letters, including some that pertained to ongoing lawsuits, pursuant to an unlawful mail watch order. (Sec. Am. Compl. at 16). The exhibits that plaintiff included as part of his Second Amended Complaint show that the mail watch was requested on November 17,

2010 and put in place on November 19, 2010, shortly after plaintiff was accused of attempted escape and violent conduct. Following the guilty verdict in his disciplinary hearing on those charges, plaintiff was designated a Central Monitoring Case due to his history of escape, a status that plaintiff describes as "the highest security classification of DOCCS." (Sec. Am. Compl. at 17).

Given the documented concerns about plaintiff's potential for escape or violent conduct, defendant Amodeo had a legitimate penological reason for reviewing plaintiff's mail, that went beyond general security considerations. In light of the considerable deference granted to prison officials when a mail watch is based upon valid security concerns, the mail watch was justified, and defendant Amodeo's motion to dismiss plaintiff's claim should be granted.

## V.  **Retaliation**

### A.  **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380.

A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, if the defendant initiated false disciplinary charges against plaintiff in retaliation for his exercise of a constitutionally protected right, plaintiff's First Amendment rights are implicated even if the plaintiff was entitled to, and did receive, full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988). Filing prison grievances and lawsuits are clearly constitutionally protected activities in the context of a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, a complaint alleging retaliation in wholly conclusory terms may be dismissed on the pleadings alone. *Vega v. Artus*, 610 F. Supp.2d 185, 206 (N.D.N.Y. 2009) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). In the context of a disciplinary hearing, the type of evidence required to establish a causal connection between plaintiff's protected activity and the defendant's alleged adverse action includes: temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements from the defendants regarding their motives. *Santiago v. Whidden*, No. 3:10-CV-1839, 2012 WL 668996, at *7 (D. Conn. Feb. 29, 2012) (*citing Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007)). Even when plaintiff makes the appropriate showing,

dismissal may still be appropriate where the defendant demonstrates that they would have taken the adverse action even in the absence of the protected conduct. *Vega,* 610 F.Supp. at 206 (citing *Bennett*, 343 F.3d at 137).

### B.    Application

Plaintiff alleges that defendant Amodeo issued MBR-2 in retaliation, after reading  plaintiff's confiscated mail and learning that plaintiff planned to sue him and other defendants. (Sec. Am. Compl. at 16).  Plaintiff also contends that these retaliatory actions resulted in his designation as a Central Monitoring Case. (Sec. Am. Compl. at 16-17).

MBR-2 charged plaintiff with soliciting and extortion. (Dkt. No. 38-2, at 132). The first charge accused plaintiff of writing a letter to his niece encouraging her to smuggle tobacco to him during visitation. (*Id*.).  The second charge stemmed from correspondence encouraging his niece to locate defendant Bish and obtain a signed affidavit that would refute the charges in MBR-1. (*Id*.).  In his letters, plaintiff advised his niece that she may be able to obtain a favorable affidavit by threatening to accuse Bish of assault, robbery or other crimes, thereby jeopardizing his parole status. (*Id*.).

At his disciplinary hearing, plaintiff admitted to writing the letters in question. (Dkt. No. 38-1, at 173).  Plaintiff read an excerpt from one letter, in which he complained of a lack of cigarettes and advised his niece "[y]ou know if you really wanted, you could get a box or two of tobacco and do the popcorn trick.[13]" (*Id*.).  In a

---

[13] Defendant Amodeo testified at the disciplinary hearing that he believed plaintiff was encouraging his niece to hide tobacco in popcorn or other food, and that plaintiff planned to swallow it in order to smuggle it back to his cell.

separate letter read at the hearing, plaintiff advised his niece,

> I need you to find this asshole and just let him know point blank write the
> affidavit, have it notarized or your [sic] going to make sure he violates his
> parole. You can say anything, he tried to rob you, assault you, threaten
> you anything and don't tell him who you are under any circumstances.
> Once you have that, you won't ever have to see him again. You can even
> snap his picture on your phone just to scare him. He can't come back, he
> has way too much to loose [sic]." (*Id*. at 178).

Plaintiff did not dispute the content of any of the letters at the hearing, but argued that defendant Amodeo and others were misinterpreting his words. Because plaintiff admitted to engaging in the conduct that formed the basis of MBR-2, his retaliation claims against defendant Amodeo should be dismissed. *See, e.g.*, *Lowrance v. Achtyl*, 20 F.3d 529, 534-35 (2d Cir. 1994) (defendants met their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct because the plaintiff had admitted to engaging in the misconduct that formed the basis of the misbehavior report; plaintiff's retaliation claim was properly dismissed). Even assuming that defendant Amodeo knew that plaintiff planned to name him as a defendant when he issued the misbehavior report, the temporal proximity between the two would not, by itself, suffice to establish causation. *Id.* at 370. At most, plaintiff has alleged that defendant Amodeo was motivated by both proper and improper reasons. This is insufficient to support a retaliation claim.

## VI.   Conspiracy

### A.   Legal Standards

In order to support a claim for conspiracy pursuant to section 1983, there must be "(1) an agreement . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity, as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action are insufficient. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. *Ciambriello*, 292 F.3d at 325.

### B.   Application

Plaintiff claims that defendant Wise, a correctional officer, and defendant Bish, an inmate, conspired to falsely accuse plaintiff of planning a violent prison escape. (Sec. Am. Compl. at 24). In exchange for providing the false basis for MBR-1, defendant Bish was rewarded with dismissal of his own pending disciplinary charges

and released from custody.[14] (*Id.*)  Plaintiff offered two interactions between defendant Bish and unidentified corrections officers in support of his conspiracy theory.  In the first, an unidentified corrections officer called defendant Bish "a real rat" in front of the other inmates during a search of plaintiff's cell on November 15, 2016. (Dkt. No. 38-1 at 67).  The next day, defendant Bish stopped an unidentified corrections officer and requested to be moved, whispering, "they know, so you have to get me outta here." (Sec. Am. Compl. at 5).

Besides plaintiff's conclusory allegations, the second amended complaint does not offer any indication of when, where, or how defendants Wise and Bish agreed to execute the purported conspiracy.  Plaintiff has not even alleged any contact between defendant Wise and defendant Bish, and has not offered any support, beyond his own conclusions, for his theory that the confidential informant referred to in MBR-1 was actually defendant Bish.

Because plaintiff has not made any allegations that would support an inference of concerted conduct between defendants Wise and Bish, this court recommends that defendant Wise's motion to dismiss be granted.  For the same reason, if the court grants defendant Wise's motion to dismiss, *sua sponte* dismissal of the claim against defendant Bish is also recommended.

---

[14] At his disciplinary hearing on MBR-1, plaintiff testified that defendant Bish had also accused a number of other inmates of drug and gang activity.  (Dkt. No.38-1 at 66).

## VII. Opportunity to Amend

### A. Legal Standard

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000). In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint."

### B. Application

In this case, this court finds that any attempt by plaintiff to amend his complaint would be futile. Plaintiff has already amended his complaint twice, asserting almost identical claims each time. In addition, if this court's recommendations are accepted, plaintiff's due process claims would remain barred by collateral estoppel and/or *Rooker Feldman*. Accordingly, this court recommends dismissal of the second amended complaint with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motions to dismiss (Dkt. Nos. 51, 63) be **GRANTED**, and that the second amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     April 1, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge