# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

FRANCIS SMYTHE,

                              Plaintiff,

        v.                                     9:13-CV-1288
                                              (LEK/ATB)

JOHN BISH, et al,

                              Defendants.

FRANCIS SMYTHE, Plaintiff pro se
BRIAN W. MATULA, Ass't Att'y Gen. for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In his second amended civil rights complaint ("SAC"), plaintiff alleged that his due process rights were violated during two separate prison disciplinary hearings. (SAC at 5-60) (Dkt. No. 38). On January 4, 2016, defendants made a motion to dismiss plaintiff's SAC for failure to state a claim, based upon collateral estoppel and the *Rooker Feldman*[1] doctrine. (Dkt. No. 63). I recommended dismissing the entire action, and plaintiff filed timely objections to my recommendation. (Dkt. Nos. 72, 77).

After reviewing the plaintiff's objections, Judge Kahn adopted most of the recommendation. (Dkt. No. 79). The only remaining claims are (1) a due process claim against defendant McLoughlin for inadequate assistance in connection with the

---

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

November 1, 2010 misbehavior report ("MBR-1"), and (2) a due process claim against defendant hearing officer Wolczyk for failing to call defendant McLoughlin as a witness in connection with MBR-1. (Dkt. No. 79 at 12). Judge Kahn dismissed all other claims and all other defendants. (Dkt. No. 79 at 11-12).

Presently before the court is a motion for summary judgment filed on behalf of the remaining two defendants. (Dkt. No. 93). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 102, 103). For the following reasons, this court agrees with defendants and will recommend dismissal of the SAC in its entirety.

## I.   Facts

Defendants have filed the transcript of the disciplinary hearing related to MBR-1, together with all the documents related to that hearing except for any confidential information that defendant Wolczyk considered. (Def.s' Exs. A-E) (Dkt. Nos. 93-5-93-9). Defendants have also filed a transcript of plaintiff's November 18, 2016 deposition. (Def.s' Ex. F) (Dkt. No. 93-10). This court's April 1, 2016 Report-Recommendation contains a summary of the facts in this case, and rather than setting forth the relevant facts at the outset of this recommendation, the court will discuss the remaining facts as required during the discussion of the plaintiff's remaining grounds for relief.

## II.   Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.   Due Process

### A.   General Legal Standards

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants

deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration–between 101 and 305 days– . . . a district court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal

4

SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that are found to affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

## B. Application

In this case, there is no question that a liberty interest was affected as the result of MBR-1 and the accompanying disciplinary hearing. Plaintiff received thirty months disciplinary confinement and thirty-six months loss of good time.[2] (Def.s' Ex. E) (Dkt.

---

[2] Plaintiff filed the required *Peralta* waiver so that this case could proceed, notwithstanding the plaintiff's loss of good time. (Dkt. No. 11 at 10-12, Dkt. No. 12 at 10). The court accepted plaintiff's waiver and dismissed all claims plaintiff had which related to the loss of good time (Dkt. No. 16 at 13). *See Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006) (In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87. This is referred to as the

No. 93-9).  Thus, the court may proceed to consider the merits of plaintiff's two due process claims.

### 1. Defendant McLoughlin

### a. Legal Standards

Prison officials have a "'constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges.'" *Brooks v. Piecuch*, No. 6:13-CV-6338, 2017 WL 1161489, at *7 (W.D.N.Y. Mar. 28, 2017) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988)).  The regulations in New York provide for the appointment of an employee assistant to help the inmate prepare for the hearing. *Id.* (citing N.Y. Code of Rules & Regs. §§ 251-4.1, 251-4.2).  The assistant is assigned to act as the inmate's "surrogate," "'to do what the inmate would have done were he able.'" *Id.* (quoting *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993)).  However, the assistant is not obliged to go beyond the specific instructions of the inmate, because to do so would be akin to acting as counsel, to which the inmate is not entitled. *Id.*  In addition, any violations of this qualified right

---

"favorable termination rule."  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rationale in *Heck* to section 1983 challenges to prison disciplinary proceedings in which a decision in plaintiff's favor would necessarily reverse the administrative decision revoking a plaintiff's good-time credits, thereby affecting the length of the plaintiff's confinement. 520 U.S. at 644.

In *Peralta*, the Second Circuit held that *Heck's* "favorable termination" rule was not an absolute bar to a prisoner who was subject to "mixed sanctions" as the result of a disciplinary hearing. 467 F.3d at 104.  "Mixed sanctions" are defined as "sanctions that affect both (a) the duration of [plaintiff's] imprisonment and (b) the conditions of his confinement." *Id.*  The loss of good time affects the duration of plaintiff's confinement, while the SHU sentence only affects the conditions of plaintiff's confinement.  The Second Circuit held in *Peralta*, that an inmate subject to mixed sanctions could proceed separately under section 1983 with a challenge to the sanctions which affect the conditions of his confinement only if he was willing to "forgo once and for all any challenge to any sanctions that affect the duration of his confinement." *Id.*  This has become known as a *Peralta* Waiver.

6

to assistance are reviewed for harmless error. *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009). Harmless error exists if the result of the hearing would not have been different absent the error. *See Murray v. Arquitt*, No. 9:10-CV-1440, 2014 WL 4676569, at *19 (N.D.N.Y. Sept. 18, 2014) (citations omitted).

### b. Application

In this case, plaintiff claims that defendant McLoughlin violated plaintiff's constitutional right to an employee assistant because McLoughlin did not obtain the testimony of Inmate Bish and/or lied about Bish's alleged refusal to testify. Plaintiff speculates that defendant McLoughlin lied about interviewing Inmate Bish because Bish was released on the same day that McLoughlin said that Bish was interviewed. Plaintiff believed that Bish was the confidential informant in his case and wanted him to testify so that Bish could explain that he lied about plaintiff in order to obtain favorable treatment for himself. Plaintiff also alleges that defendant McLoughlin did not obtain any relevant "paperwork" so that plaintiff could adequately defend himself during the disciplinary hearing before defendant Wolczyk.

It is true that defendant McLoughlin did not obtain Mr. Bish's testimony for plaintiff. Inmate Bish was released on the same day that defendant McLoughlin said that he refused to testify.[3] It is also true that defendant McLoughlin did not produce the documents that plaintiff requested. Some of the documents, such as the "Unusual Incident" report did not exist, and the other documents relevant to the investigation of

---

[3] Plaintiff argued that defendant McLoughlin could not have interviewed Mr. Bish because inmates were released early in the morning, and McLoughlin would not have had the time to interview Mr. Bish. (Pl.'s Dep. at 37).

MBR-1 were "confidential" and could not be revealed to the plaintiff.

The court need not decide whether defendant McLoughlin lied about Mr. Bish's refusal to testify, nor need this court decide whether the failure to turn over the confidential information to plaintiff was error.[4]  Even assuming that defendant McLoughlin failed to obtain evidence for plaintiff, documentary or otherwise, any error was harmless.

Although plaintiff states that McLoughlin did not do anything for him, that is not true.  Plaintiff testified at his deposition that he met twice with defendant McLoughlin.  (Pl.'s Dep. at 11-12).  During this time plaintiff requested that defendant McLoughlin interview Mr. Bish and Captain Chuttey, and that he determine the names of the officers who frisked plaintiff's property. (Def.s' Ex. B).  The Assistant Form indicates that Inmate Bish refused to testify, that no Unusual Incident Report or To/Froms existed, but does contain the names of the officers who frisked plaintiff's property (Investigators Amodio and Ammerman). (*Id.*; Pl.'s Dep. at 16, 20).  Defendant McLoughlin obtained the names of those officers at plaintiff's request.  At his deposition, plaintiff testified that at their second meeting defendant McLoughlin told plaintiff that any paperwork that did exist was confidential, and he should raise any witness and confidentiality issues with the hearing officer. (Pl.'s Dep. at 18-20, 23, 36).

Defendants have also filed the transcript of the plaintiff's disciplinary hearing.  (Def.s' Ex. C).  At the beginning of the hearing, plaintiff complained that he was not

---

[4] This court makes no such finding, particularly with respect to the confidential information as will be discussed below.  Defendant McLoughlin had no authority to turn over confidential reports to the plaintiff.  As plaintiff alleges, defendant McLoughlin would have had to consult someone "above his pay grade."

satisfied with defendant McLoughlin's assistance. (Hearing Transcript ("HT") at 4).[5] The hearing officer told plaintiff that the documents indicated that Mr. Bish "refused" to testify.[6] (*Id.*) Plaintiff challenged that statement and informed the hearing officer that Mr. Bish was released on the same day that he was allegedly interviewed by defendant McLoughlin. (*Id.*) Plaintiff stated that he wished to object to the entire proceeding, but the hearing officer continued to attempt to determine what evidence plaintiff needed for the hearing that he had been unable to obtain. (HT at 4-6). Defendant Wolczyk also discussed the witnesses that plaintiff had requested. (*Id.*)

Plaintiff explained to the hearing officer why he wanted to have Inmate Bish called as a witness. (HT at 9-11). Plaintiff stated that he believed Mr. Bish lied about plaintiff and about other inmates in exchange for favorable treatment with respect to his own pending misbehavior reports and his imminent release. (*Id.*) The hearing officer stated that he would arrange for Captain Chuttey's testimony, and he would find out if there "is any paperwork, any Unusual Incident Report or To/Froms." (HT at 11). The hearing officer stated that "if there are, I'll see that you're provided with those." (*Id.*) The hearing officer also told plaintiff that, because there was confidential information involved, he would have a "confidential" conversation with Sergeant Wise, who wrote the Misbehavior Report, concerning the reliability and credibility of the information." (*Id.*) Plaintiff then stated that he wished to call Sergeant Wise as a witness, even

---

[5] The actual pages of the hearing transcript are numbered, but they do not match the number assigned by the court's electronic filing system. The court will cite to the page numbers as they appear in the original transcript at the bottom right of the page.

[6] Defendant Wolczyk told plaintiff "[a]ccording to what the assistant did, he is refused, sir." (HT at 4). *See* Def.s' Ex. B (Assistant Form).

though he was not listed on plaintiff's witness request. (HT at 12). The hearing officer

reserved decision, but ultimately called Sergeant Wise as a witness.

Thus, whether defendant McLoughlin interviewed Mr. Bish, who refused to

testify, or whether he did not interview Mr. Bish prior to his release and "lied" to

plaintiff,[7] the hearing officer cured any violation that may have occurred by attempting

to obtain all the witnesses that plaintiff requested, including Mr. Bish, the two Inspector

General Investigators, Captain Chuttey, and Sergeant Wise.[8] The hearing officer also

obtained the testimony of Nurse Smith, who was asked whether plaintiff had any

pending "outside trips."[9] (HT at 57-60). The hearing officer also attempted to obtain

any paperwork that plaintiff was entitled to see. Defendant McLoughlin could not give

plaintiff documents that were confidential without permission. The hearing officer then

adjourned the hearing "to arrange for the witnesses and to see if there are any

documents . . . ." (HT at 15).

The hearing reconvened three days later on November 22, 2010.[10] (HT at 16).

---

[7] If this is true then defendant McLoughlin would have also lied on the Assistant Form, where it indicates that Inmate Bish refused to testify. (Def.s' Ex. B).

[8] The hearing officer listed the witnesses that plaintiff had requested "so far." (HT at 12). "Sergeant Wise, the two investiga[tors], I'm gonna reserve judgment on them. I don't know if they're involved at all in this. . . . Captain Chuttey and Mr. Bish, correct?" (*Id.*) Plaintiff responded "Uh, so far, yeah." (*Id.*)

[9] Plaintiff was told that his misbehavior involved planning to escape while on a "medical trip" by using violence to subdue the guards who were escorting him. Plaintiff argued that there were no "medical trips" scheduled, so the information could not possibly be correct, and he was therefore, innocent of the charges. The court notes that sufficiency of evidence is not an issue in this case. Plaintiff has raised that ground for relief in his Article 78 proceeding. The sufficiency claim was dismissed on the merits in the Article 78 proceeding and on collateral estoppel grounds in this case.

[10] The transcript states that the hearing reconvened on November 22, 2010. (HT at 16). However, when defendant Wolczyk adjourned the hearing later and "reconvened," the transcript states

The hearing officer heard the testimony of Captain Chuttey and Sergeant Wise over the telephone. (HT at 16-22, 23-30). Captain Chuttey testified that there was no Unusual Incident Report, and that the only documentation was based on the Sergeant's investigation which was confidential. (HT at 18). Plaintiff asked Captain Chuttey about Inmate Bish, and Captain Chuttey stated that he never received anything from Inmate Bish. (HT at 19). Captain Chuttey also confirmed that Inmate Bish "went home." (*Id.*)

Plaintiff asked Sergeant Wise about the misbehavior report, and asked Sergeant Wise if there was any "protocol" to prevent any "crackpot" from making false accusations. (HT at 27). Plaintiff again discussed his beliefs regarding Inmate Bish and stated that he wished to call Mr. Bish as a witness. (HT at 27-28). The hearing officer stated that "I don't know if Mr. Bish was paroled or not but if he was paroled, we'll see if he wishes to testify since you seem to think that he's critical to your defense." (HT at 33). The hearing officer adjourned the hearing again.

When the hearing reconvened, the hearing officer had obtained the testimony of the two Inspector General Investigators, Amodio and Ammerman. (HT at 36). The investigators testified over the telephone. (HT at 36-41, 44-47). Plaintiff then asked to have Mr. Bish's parole officer called as a witness. (HT at 48). The hearing officer adjourned the hearing again to determine "the whereabouts of Mr. Bish, whether or not . . . he's been released, whether or not he's on Parole and if he's on Parole, whether or

---

that the date was November 21, 2010, which cannot be correct if the first date is correct. The hearing documents indicate that the hearing commenced on November 19, 2010 at 11:07 a.m. and ended on December 3, 2010 at 4:23 p.m. (Def.s' Ex. E). The errors in the date do not affect this court's findings because it is clear that the hearing was adjourned multiple times in order to attempt to obtain evidence and witnesses that plaintiff had requested.

not he wishes to testify." (HT at 49).

The hearing reconvened on December 3, 2010. (HT at 51). The first order of business for the hearing officer was a discussion relating to the potential testimony by Mr. Bish. (HT at 51-52). The hearing officer read a letter into the record from Mr. Bish's parole officer stating that Mr. Bish had "absconded his parole [s]upervision and a Parole Warrant . . . was issued" on November 22, 2010. (HT at 52). Attempts to locate and apprehend Mr. Bish were continuing at that time. (*Id.*) Defendant Wolczyk made the letter part of the record and told plaintiff that Mr. Bish was not available to testify.[11] (*Id.*)

Thus, to the extent that the court could find constitutional error in McLoughlin's alleged failure to interview or obtain Mr. Bish as a witness for plaintiff, any such error was harmless based on the subsequent efforts to find Mr. Bish by hearing officer Wolczyk.[12] *See Brooks v. Piecuch*, 2017 WL 1161489, at *8 (relief occurring at the hearing may cure inmate assistant error) (distinguishing *Johnson v. Greiner*, No. 03 Civ. 5276(DLC), 2007 WL 2844905, at *15 (S.D.N.Y. Sept. 28, 2007); *Murray v. Arquitt*, 2014 WL 4676569 at *19 (finding harmless error when the hearing officer took

---

[11] Based upon this letter, which was made part of the record, defendant Wolczyk did not need to call Mr. Bish's parole officer. Although an inmate is entitled to present witnesses and evidence, there is no constitutional right to confrontation or cross-examination. *Sowell*, 2016 WL 1696454, at *10 (citing inter alia *Wolff v. McDonnell*, 418 U.S. at 567).

[12] The court must note that, to the extent that plaintiff alleges that defendant McLoughlin failed to interview Inmate Bish, it strains the imagination to think that, even if Mr. Bish was interviewed by defendant McLoughlin, Mr. Bish would opt to stay in prison and testify on behalf of plaintiff when he was scheduled to be released the day before plaintiff's hearing. In addition, if plaintiff were correct, and Mr. Bish "started everything," it is also difficult to believe that he would have agreed to testify or even give a statement on plaintiff's behalf to inform the prison officials that he **lied** to them about plaintiff's conduct, particularly when he was due to be released from prison.

steps to provide the plaintiff with the requested evidence). In addition, to the extent that plaintiff alleges that defendant McLoughlin should have obtained the requested documents for plaintiff, it is clear that no such documents existed,[13] and any documents that did exist were confidential. As stated above, an employee assistant in a disciplinary hearing is only authorized to do what plaintiff could not do himself. *Silva v. Casey*, 992 F.2d at 20. Plaintiff would not have been able to obtain confidential documents with or without defendant McLoughlin. *See Rodriguez v. Selsky*, No. 9:07-CV-432, 2011 WL 1086001, at *9 (N.D.N.Y. Jan. 25, 2011) (no indication that the documents were withheld from plaintiff without justification or as the result of the assistant's ineffective assistance; if plaintiff was not permitted to receive certain documents, then plaintiff's assistant could not access them either), *Rep't Rec. adopted*, 2011 WL 830639 (N.D.N.Y. Mar. 3, 2011).

In his response to defendants' motion, plaintiff cites *Sowell v. Bullis*, No. 9:13-CV-1482, 2016 WL 1696454, at *9 (N.D.N.Y. Mar. 25, 2016) for the proposition that an employee's assistance is inadequate where the assistant told plaintiff that "higher authorities" told him that he could not interview inmates on plaintiff's behalf. *Sowell* stands for the proposition that an inmate assistant is "indeed supposed to talk to and interview potential witnesses in preparation for the hearing." This proposition is not in dispute. However, in this case, defendant McLoughlin stated that he did interview Mr.

---

[13] During the hearing plaintiff and defendant Wolczyk discussed defendant McLoughlin's allegation that there was no "UI Report . . . no To/Froms, . . . no Inter Departmental . . . forms." (HT at 5). The hearing officer told plaintiff he would check on the availability of such forms (HT at 11, 13-14). Captain Chuttey testified that there were no such forms, and that all other documentation was confidential. (HT at 18). This testimony is consistent with what defendant McLoughlin told plaintiff.

Bish, and that Mr. Bish refused to testify. Defendant Wolczyk later attempted to obtain the testimony, but Mr. Bish absconded from parole supervision. Defendant McLoughlin's actions did not prevent plaintiff from obtaining his witness. Thus, any due process claims against defendant McLoughlin may be dismissed.

### 2. Defendant Wolczyk

#### a. Legal Standard

A hearing officer does not violate due process by excluding irrelevant or unnecessary evidence or testimony. *Kawalinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)); *Chavis v. vonHagn*, No. 02-CV-119, 2009 WL 236060, at *62 (W.D.N.Y. Jan. 30, 2009) (citing *Kawalinski, supra*).

#### b. Application

In this case, plaintiff's remaining claim against defendant Wolczyk is that he refused to call defendant McLoughlin as a witness. Defendant argues that plaintiff never requested defendant McLoughlin at any time during the hearing. However, in his response, plaintiff argues that one exchange between him and the hearing officer was plaintiff's attempt to request defendant McLoughlin as a witness even though plaintiff did not mention McLoughlin's name. The exchange was as follows:

HEARING OFFICER:     Were you satisfied with your assistance?

INMATE SMYTHE:     Um, no, not really.

HEARING OFFICER:     Ok, why not?

INMATE SMYTHE:     Cause neither of us knew what to do about it.

| HEARING OFFICER: | You requested Mr. [Bish], he refused. Captain Chuttey is mentioned in the reports that you are entitled INAUDIBLE. |
| --- | --- |
| INMATE SMYTHE: | Wait a second. You said the requested witness refused? |
| HEARING OFFICER: | Mr. [Bish] refused, yes sir. |
| INMATE SMYTHE: | Um, Mr. Bish is not even here so how could he refuse? |
| HEARING OFFICER: | According to what the assistant did, he is refused, sir. |
| INMATE SMYTHE: | Well, you know as the Hearing Officer, I would ask you then to have **him called**. |
| HEARING OFFICER: | For what purpose? |
| INMATE SMYTHE: | Um, because this all came about from Mr. Bish and I'm sure that **he** could explain this. Mr. Bish isn't here. |
| HEARING OFFICER: | Where is Mr. Bish? |
| INMATE SMYTHE: | Mr. Bish was released, uh, yesterday, I believe. |

(HT at 4) (emphasis added). Plaintiff argues that the "him" and "he" are referring to defendant McLoughlin, not Mr. Bish because "Mr. Bish isn't here." (*Id.*) This court agrees that, logically, Mr. Smythe could have been referring to defendant McLoughlin, although it is not clear. Plaintiff appears to have been requesting that defendant McLoughlin explain how or why Mr. Bish refused to testify before he left. Defendant Wolczyk never specifically refused to call defendant McLoughlin, but clearly he never testified.

Defendants correctly argue that plaintiff had ample opportunity to request defendant McLoughlin as a witness later during the hearing, but he did not do so.

Defendant Wolczyk obtained almost all of plaintiff's requested witnesses, including the two investigators from the Inspector General's Office. Later during the hearing, defendant Wolczyk was discussing witnesses with plaintiff, and plaintiff asked for Sergeant Wise, who was not on plaintiff's original list.

> INMATE SMYTHE: . . . I'm still gonna wanna have to, um, ask . . . Sergeant Wise some questions.
>
> HEARING OFFICER: That's fine, sir. You want him as a witness?
>
> INMATE SMYTHE: Um, yeah, I thought he was down. . . .
>
> HEARING OFFICER: No sir, I don't have him down.
>
> INMATE SMYTHE: OK.
>
> HEARING OFFICER: Sergeant Wise, the two investiga[tors] . . . I.G.'s I'm gonna reserve judgment on them. I don't know if they're involved at all in this. Uh, Captain Chuttey and Mr. Bish, correct?
>
> INMATE SMYTHE: **Uh, so far, yes.**

(HT at 12) (emphasis added). Plaintiff did not request defendant McLoughlin. Shortly thereafter, defendant Wolczyk adjourned the hearing "to arrange for the witnesses and to see if there are any documents . . . ." (HT at 15). Sergeant Wise, Captain Chuttey, and both of the IG witnesses testified.

Defendant Wolczyk allowed plaintiff to request other witnesses during the hearing that plaintiff never requested prior to the hearing. (HT at 30) (Officer M. White).[14] Defendant Wolczyk later asked again whether plaintiff had any other

---

[14] Officer White did not ultimately testify. However, he was not a necessary witness. Plaintiff only wanted to ask Officer White if any contraband was found in plaintiff's cell. Defendant Wolczyk

witnesses to call.

> HEARING OFFICER:  OK.  I'll consider the request for [Inspector] general officers.  Any other witnesses other than Mr. Bish and those individuals?

> INMATE SMYTHE:  No, at this time, no.

(HT at 35).  Later during the hearing, plaintiff asked for additional "testimony," and told the hearing officer that plaintiff would like to recall Captain Chuttey, Sergeant Wise,[15] and to call the "Nurse Administrator" as an additional witness. (HT at 54, 56). Plaintiff did not mention defendant McLoughlin. (HT at 54-55).  Plaintiff then complained that he only had "four witnesses," and he accused the hearing officer of contacting and speaking to them outside of plaintiff's presence.[16] (HT at 56).  Plaintiff did not mention defendant McLoughlin at that time. (*Id.*)  A nurse from the medical department subsequently testified. (HT at 58-60).

After Sergeant Wise's second appearance, defendant Wolczyk asked plaintiff again if there were "any other witnesses you want me to call sir before I make a decision in this matter." (HT at 67).  Defendant Wolczyk actually asked plaintiff twice on the same page of the transcript, and the second time, he reminded plaintiff that he "indicated [he] wanted me to hear from Captain Chuttey again." (HT at 67).  Plaintiff

---

considered the contraband receipt from the search, indicating that no contraband was found, and Investigator Ammerman testified that no contraband was found in plaintiff's cell. (HT at 46).

[15] Sergeant Wise was recalled and testified in plaintiff's presence. (HT at 65).  Plaintiff was also allowed to hear Sergeant Wise's prior testimony so that plaintiff could ask further questions. (*Id.*) Sergeant Wise stated that "[t]he information stated that I found INAUDIBLE that you were trying to get somebody to assist you and [sic] a possible attempt of escaping during a trip." (HT at 65).

[16] The court notes that defendant Wolczyk responded that he "only thing I've done is arrange for their testimony." (HT at 57).

stated that he wanted to ask Chuttey one more question, but that "he doesn't have to be here; you can do it over the phone." (HT at 68). Defendant Wolczyk stated that this was an important matter, and that if Captain Chuttey testified, plaintiff was going to have to be present so that he could propose the questions. (Id.) Plaintiff then stated "[n]o that's all right. You're ready to finish this, let's finish this." (Id.) Defendant Chuttey then asked if plaintiff was "waiv[ing] Captain Chuttey as a witness," and plaintiff said "Uh, yeah." (Id.)

Defendant Wolczyk then asked again: "OK. Are there any other witnesses or documents you want me to consider before I make a decision in this matter," and plaintiff stated "[m]mm, no, not at . . . no." (*Id.*) Thus, it is clear that, even if plaintiff's initial "request" could be interpreted as a request for defendant McLoughlin to testify, and defendant Wolczyk ignored the request, the plaintiff had ample opportunity to request this witness later during the hearing. Considering defendant Wolczyk's efforts to obtain witnesses for plaintiff, it is hard to believe that he actually "refused" to call defendant McLoughlin. The alleged "request" was quite confusing, and defendant Wolczyk could have either misunderstood to whom plaintiff was referring because they were discussing Inmate Bish, or defendant Wolczyk could have simply determined that he would attempt to obtain Bish's testimony and did not need McLoughlin to testify whether he interviewed Bish or not.[17]

In any event, the court notes that defendant McLoughlin's testimony would have

---

[17] It is also possible that defendant Wolczyk believed that defendant McLoughlin's testimony was no longer necessary based on the letter from Mr. Bish's parole officer, explaining that Mr. Bish had absconded from parole.

been irrelevant to the substance of plaintiff's case. Plaintiff wished to question defendant McLoughlin about Inmate Bish and whether he "refused" to testify or whether defendant McLoughlin did not interview him. Either way, the testimony would have been irrelevant, given the efforts that defendant Wolczyk made to determine Bish's whereabouts and obtain his testimony.[18] Refusing to call defendant McLoughlin, even if he had done so, would have been completely reasonable.[19]

In his response to the defendants' motion, plaintiff argues that defendant Wolczyk denied "other" witnesses.[20] However, the only issue remaining is the denial of

---

[18] As stated above, the sufficiency of the evidence is not an issue in this case. The confidential information and the basis for plaintiff's disciplinary determination were decided in the Article 78 proceeding. The Appellate Division affirmed the disciplinary hearing, and the New York Court of Appeals denied leave to appeal. *Matter of Smythe v. Fischer*, 102 A.D.3d 1039, 957 N.Y.S.2d 1039 (3d Dep't 2013), *lv. denied*, 21 N.Y.3d 852, 965 N.Y.S.2d 790 (2013). The Appellate Division held that "[t]he misbehavior report and testimony of the correction officials familiar with the investigation, as well as the confidential information considered by the Hearing Officer in camera, provide *substantial evidence* supporting the determination of guilt." 102 A.D.3d at 1040, 957 N.Y.S.2d at 918 (emphasis added) (citations omitted). "Contrary to petitioner's claim, the Hearing Officer conducted a proper inquiry to ascertain the credibility and reliability of the information provided by the confidential source by interviewing the correction sergeant who spoke to this individual." *Id.* (citations omitted).

[19] Finally, the court must note that plaintiff's accusations are hollow. He has overlooked the fact that the second misbehavior report in this case, the claims surrounding which were dismissed by Judge Kahn on collateral estoppel grounds, involved plaintiff's attempt to have his niece locate Mr. Bish and threaten him with a parole violation if he did not assist plaintiff with his disciplinary problems. Plaintiff was apparently unsuccessful in doing so. *See* Dkt. No. 72 at 5. Plaintiff again chose defendant McLoughlin as his employee assistant, notwithstanding his dissatisfaction with him after MBR-1. (*Id.*)

[20] Plaintiff specifically refers to Officer White as a witness who was not called after plaintiff requested him. (Dkt. No. 102-2 at 14). As stated above, the only issue remaining against defendant Wolczyk is the failure to call defendant McLoughlin. However, the court notes that plaintiff asked for Officer White (one of the officers who searched his cell) so that he could testify that there was no contraband found in his cell. (HT at 30). However, plaintiff was not charged with contraband, defendant Wolczyk stated that he reviewed the contraband receipt which stated there was nothing found in plaintiff's cell (HT at 31), and Investigator Ammerman testified that no contraband was found in plaintiff's cell. (HT at 46). Plaintiff claims that Officer White would have also testified that plaintiff was not "in his cell" at the time noted in the misbehavior report. (Dkt. No. 102-1 at 14). However, this

defendant McLoughlin. In any event, it is unclear to whom plaintiff is referring. A review of the hearing testimony shows that plaintiff was allowed to call almost all of his requested witnesses, and those that were not called were either irrelevant or redundant.

Plaintiff also cites to the "Hearing Officer's Guide to the Superintendent's Hearing" as support for his claims.[21] The defendants' failure to follow state procedures, even assuming that they did, in itself does not rise to the level of a constitutional claim. *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002). Federal law, not state law or regulations define the requirements of procedural due process. *Israel v. Bradt*, No. 15-CV-6424, 2017 WL 77111, at *2 (W.D.N.Y. Jan. 9, 2017) (citations omitted); *Preterotti v. Souliere*, No. 2:16-CV-72, 2016 WL 7971319, at *8 (D. Vt. Dec. 28, 2016) (no federal constitutional liberty interest in having prison officials follow prison regulations). This court has found no constitutional violations committed by defendants. Thus, plaintiff's due process claims against both defendants may be dismissed.

---

issue of the "time" noted in the misbehavior report is irrelevant and was discussed at the hearing. (HT at 31-32). Calling Officer White would have been redundant and unnecessary. The same is true for calling a "Nurse Administrator" to testify that plaintiff had no "medical trips" scheduled. The hearing officer called Nurse Smith, who actually testified that plaintiff did have a medical trip scheduled, but it was cancelled. Defendant Wolczyk would not have been required to call the Nurse Administrator to testify to the same information. *Kawalinsky, supra* (hearing officer does not violate due process by excluding irrelevant or unnecessary evidence or testimony).

[21] In any event, the court notes that even the document cited by plaintiff states that documents "*may* be provided to the inmate upon his request, *unless such documents are deemed to be confidential*." (Dkt. No. 102-2 at 5) (citing "Hearing Officer's Guide to the Superintendent's Hearing" at 6). This statement is completely consistent with the actions of defendants in this case. The rest of the "requirements" cited by plaintiff apply unless the documents are deemed confidential, which in this case, they clearly were.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 93) be **GRANTED**, and plaintiff's SAC be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 16, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge